# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

TONYA BARNES,      )
      )
     Plaintiff,     )
      )
v.      )     No. 4:10CV1322MLM
      )
MICHAEL J. ASTRUE,     )
Commissioner of Social Security,     )
      )
     Defendant.     )

## <u>MEMORANDUM OPINION</u>

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Tonya Barnes ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff has filed a brief in support of the Complaint. Doc. 7. Defendant has filed a brief in support of the Answer. Doc. 10. The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1). Doc. 3.

## I.
## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on August 25, 2006. Tr.77-81. Following an unfavorable determination, Plaintiff requested a hearing before Administrative Law Judge ("ALJ") Michael D. Mance. Tr. 47, 56. On July 18, 2008, a hearing before the ALJ was held. Tr. 25-46. On August 28, 2008, the ALJ found that Plaintiff was not disabled through the date of the decision. Tr. 13-24. Plaintiff sought review of the ALJ's decision with the Appeals Council. Tr. 11-12. On May 18, 2010, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. As such, decision of the ALJ stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b).

Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996))).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of these impairments, or its medical equivalent, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also

Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) Findings of credibility made by the ALJ;
> (2) The education, background, work history, and age of the claimant;
> (3) The medical evidence given by the claimant's treating physicians;
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
> (5) The corroboration by third parties of the claimant's physical impairment;
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of

pain, the ALJ must consider:

> (1) the claimant's daily activities;
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
> (3) any precipitating or aggravating factors;
> (4) the dosage, effectiveness, and side effects of any medication; and
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at

1322. The absence of objective medical evidence is just one factor to be considered in evaluating the

plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations

by third parties and treating and examining doctors, as well as the plaintiff's appearance and

demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R.

§ 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past

relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457

F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138,

1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the

RFC to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The

Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th

Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden

of demonstrating that there are jobs available in the national economy that can realistically be

performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was born in 1979, alleged that she became disabled on October 1, 2002, due to anxiety disorder, split personality, and bipolar disorder. She graduated from high school and had no past relevant work. At Step 1, the ALJ found Plaintiff had not engaged in any substantial gainful activity since the date of filing to application on August 26, 2006. At Step 2, the ALJ found that Plaintiff had the severe impairments of her bipolar disorder with depression and panic disorder. At

Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. At Step 4, the ALJ found that Plaintiff had the RFC for work at all levels of exertion but was limited to simple tasks that require only occasional contact with coworkers and the general public. At Step 5, the ALJ found Plaintiff had no past relevant work; that she was 27 years old, meaning she was defined as a younger individual age 18-49 on the date of application; that she had a high school education and could communicate in English; that she did not have transferable job skills because she lacked any past relevant work; that a vocational expert testified that there were jobs in the St. Louis metropolitan area which a person with Plaintiff's RFC could perform; and that, therefore, Plaintiff was not disabled. Tr. 23.

Plaintiff argues that the ALJ failed to properly consider the opinion of her treating physician, John Hall, M.D., and the evaluation examining psychologist, Patrick Finder; that the ALJ failed to give proper consideration to Plaintiff's depression; that the ALJ drew his own inferences from medical evidence; that the ALJ failed to fully and fairly develop the record; that the ALJ failed to consider that Plaintiff's attention deficit disorder ("ADD") was a severe medically determinable impairment; and that the ALJ should have considered the affects of Plaintiff's ADD on her RFC.

## A.     Opinions of Dr. Hall and Mr. Finder:

Dr. Hall was Plaintiff's treating doctor and first saw Plaintiff on September 16, 2003, on which date Dr. Hall reported that Plaintiff discussed problems with her partner, George, and diagnosed Plaintiff with "Major depression recurrent; severe; dysthymia." Tr. 184. Dr. Hall's records reflect that, on October 23, 2003, Plaintiff reported that she had been "doing really good until just a few minutes ago when" she received news that her daughter's father failed to make a reservation

for a party for the daughter; that Plaintiff made good eye contact and had a "goal directed flow of thought"; that she described her mood as better until she received the phone call; that "her affect during [the] interview was angry, but in normal range and reactivity" ; that she denied suicidal ideation and had no evidence of psychosis; and that Dr. Hall's diagnosis was "major depression recurrent." Tr. 185.  Dr. Hall reported, on January 8, 2004, that Plaintiff said she had problems with her relationship due to infidelity of both partners; that she had hit, kicked, and pushed George; and that he had called the police.  On June 7, 2004, Dr. Hall reported that Plaintiff said she was with "a new guy - he's great, makes me and [the] kids happy"; that her children's father had gone back to prison; that her son was acting out; and that she was stressed out.  On April 28, 2005, Dr. Hall's records reflect that Plaintiff said she was "not too good"; that she was having problems with her sister in that Plaintiff's sister had attacked her; that her child's father was challenging her custody "every few months"; and that her son had recently been diagnosed with severe ADD.  Dr. Hall reported on this date that Plaintiff's mood was depressed; that her affect was sad; and that she had good eye contact and goal directed flow of thought. Tr. 189.

On July 11, 2005, Dr. Hall reported that Plaintiff was "OK"; that she had a job in a convenience store, which job she liked; and that she was arguing with her partner, Carl. Tr. 190.  As noted by the ALJ, Dr. Hall reported, on April 21, 2006, that Plaintiff had stopped taking her medication because she was pregnant; that she had been fighting a lot with her husband since her baby had been born; and that Plaintiff had depression. Tr. 148.  Dr. Hall reported, on July 17, 2006, that Plaintiff said she was a "bitch"; that George was just given a long sentence for child molestation; and that Plaintiff complained of anger toward her husband. Tr. 192.  As considered by the ALJ, on September 5, 2006, Dr. Hall diagnosed Plaintiff with bipolar disorder, type II, characterized by

anxiety and depression. Dr. Hall also reported, on this date that Plaintiff's anxiety affected "her ability to understand and follow through on detailed to complex instructions" and affected her concentration and persistence; that Plaintiff's panic attacks affected "the fabric of wholeness in simple daily pursuits"; that panic attacks and depression rendered Plaintiff "socially inept and unpredictable under stress." Tr. 145. As considered by the ALJ, Dr. Hall reported, on December 18, 2006, that Plaintiff said that she was "better, but ... pretty stressed out with Corey & Jesse" and that she thought that *Effexor was helping*. Dr. Hall reported on March 5, 2007, that Plaintiff said she was "going through a lot"; that she and "Carl [had] been fighting"; and that he was "in & out of the house a lot." Also, on March 5, 2007, Dr. Hall reported that Plaintiff's mood was better and diagnosed her with bipolar disorder, type II. Dr. Hall reported, on July 27, 2007, that Plaintiff said she could not wait until the school year started so she and her baby would be alone during the day; that Valium helped her better than Xanax; and that Plaintiff's mood was depressed. Tr. 197. Dr. Hall reported on October 1, 2007, that Plaintiff said her husband was pressuring her find work; that she had suicidal thoughts; and that she was angry a lot. Tr. 198. On December 21, 2007, Dr. Hall reported that Plaintiff said that *medication helped* "but [she] fel[t] pretty stressed" and that she had "a lot of marital problems." Tr. 201.

On February 22, 2008, Dr. Hall reported that Plaintiff said she felt like people were looking at her.[1] Tr. 200. On April 22, 2008, Dr. Hall reported that Plaintiff said she was "mad, angry/hateful all the time"; that she had to drive her children to three different schools; that "every now & then"

---

[1]     Defendant suggests that Dr. Hall may have diagnosed Plaintiff with ADD on February 22, 2008, as he prescribed Adderall on that same day. Doc. 10 at 10. The court notes that Dr. Hall's notes of this date are not clear in this regard although, as stated above, on April 22, 2008, Dr. Hall noted both that Adderall helped Plaintiff and that she had ADD.

she was in a good mood; and that *Adderall calmed her down*. On this date Dr. Hall diagnosed Plaintiff with ADD, in addition to bipolar disorder. Tr. 208. On June 20, 2008, Dr. Hall reported that he discussed Plaintiff's upcoming disability hearing with her; that she said her husband "called the cops on [her]"; that she "put [her] hands on [her husband]"; and that Plaintiff had "bipolar II/ADD." Tr. 207.

On June 21, 2008, Dr. Hall completed a Mental Residual Functional Capacity Assessment of Plaintiff. On this form, Dr. Hall checked boxes indicating that Plaintiff was moderately limited in regard to remembering locations and work-like procedures, understanding and remembering very short and simple instructions, carrying out very short and simple instructions, making simple work-related decisions, asking simple questions or requesting assistance, maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, being aware of normal hazards and taking appropriate precautions, and traveling in unfamiliar places. Dr. Hall further reported that Plaintiff was markedly limited in regard to her ability to understand and remember detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, sustaining an ordinary routine without special supervision, working in coordination or proximity with others, completing a normal work-day without interruptions from psychologically based symptoms, interacting appropriately with the general public, accepting instructions, getting along with co-workers, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. Dr. Hall also wrote on this form that Plaintiff had bipolar disorder and ADD; that these conditions caused "her difficulties in task completing and consistency and interfere[d] with her ability to constructively

interact with others"; that she "may become labile or upset without warning which tend[ed] to imperil her employment." Tr. 203-205.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence"). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). Plaintiff contends that the ALJ should have given controlling weight to Dr. Hall's opinion, including his opinion on the June 21, 2008 Mental RFC Assessment.

First, upon not giving controlling weight to Dr. Hall's opinion, including the June 2008 Mental RFC Assessment, the ALJ considered that Plaintiff's records from 2003 detailed Plaintiff's domestic violence, her going from one bad relationship to another, and having children by different men. The ALJ further considered that 2004 "was much the same" in regard to Plaintiff's domestic relationships and problems related to them; that, in 2005, Plaintiff's chief complaints and problems were related to domestic stress; that such episodes continued through 2006-2008; that many of Plaintiff's "complaints and problems were self-inflicted"; and that "details of bad relationships and the stresses of parenthood are not objective diagnostic tools." Tr. 22. Clearly, Dr. Hall's records reflect that many of Plaintiff's complaints and problems were related to her relationships, including those with her husbands, sister, and children. Situational depression is not disabling. See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations).

Second, Dr. Hall reported on December 18, 2006, December 21, 2007, and April 22, 2008, that medications helped Plaintiff. Conditions which can be controlled by treatment are not disabling. See Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered

disabling); Estes, 275 F.3d at 725; Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450.

Third, the ALJ considered that, although Dr. Hall was a treating physician and his opinion is generally entitled to controlling weight, his notes were not objective. As discussed above, Dr. Hall's notes primarily reflect Plaintiff's recitation of her problems and her subjective symptoms. As noted by the ALJ, Dr. Hall's notes do not include medically acceptable clinical or diagnostic data. The court notes that, even under sections of his reports titled "Mental Status Examination," Dr. Hall recorded subjective data, such as Plaintiff's description of her mood. See e.g., Tr. 184. Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987); Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

Fourth, the ALJ considered that Dr. Hall's opinion on the June 2008 Mental RFC Assessment was not consistent with his own notes and that, "[n]owhere in his notes does he report symptoms and limitations as severe as are reported in the June 2008 Assessment." The ALJ also considered that, in the June 2008 Mental RFC Assessment, Dr. Hall went "so far as to add a diagnosis of ADD, seemingly out of nowhere. There [was] no diagnostic test for this condition anywhere in the record and how he arrived at such seems to be more guess-work than anything else." Tr. 22. The court notes that Dr. Hall frequently reported that Plaintiff had good eye contact and that her thought

process was goal directed. Tr. 184-93. He also reported that, despite Plaintiff's describing her mood as "angry" and despite her affect being subdued during an interview, her affect was "normal in range and reactivity." Tr. 184. Where a treating physician's notes are inconsistent with his RFC assessment, controlling weight should not be given to the RFC assessment. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006).

Fifth, a treating physician's checkmarks on a form, are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d at 805-06; Hogan 239 F.3d at 961; Social Security Ruling ("SSR") 96-2p, (July 2, 1996). As discussed above, Dr. Hall's notes do not include objective medical evidence.

Sixth, upon not giving controlling weight to Dr. Hall's Mental RFC Assessment, the ALJ considered that Plaintiff reported that she was a stay-at-home mom and that was what she wanted to do; that she took care of her four children, full-time; that she drove them to and from school, cooked meals, cared for the house, did laundry, shopped, paid bills, cleaned her house. Tr. 22, 31-35. 110. Additionally, as noted by Mr. Finder, Plaintiff was a stay-at-home mom, which was "the role she [] fulfilled most of her life." Tr. 169. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538

(8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). Moreover, Plaintiff's decision to stay home and raise her children is not a basis for disability. See Eichelberger, 390 F.3d at 590 (holding that the ALJ properly discounted the plaintiff's complaints, noting that she ceased working at the same time she became the primary care giver to her grandchild).

Seventh, the ALJ did give some weight to Dr. Hall's opinion concerning Plaintiff's functional limitations. Dr. Hall opined that Plaintiff had marked limitations of her ability to understand, remember, and carry out detailed instructions and of her ability to maintain attention and concentration for extended periods. He also found that Plaintiff had marked limitations of her ability to work around others and interact with the general public, supervisors, and coworkers. Consistent with Dr. Hall's conclusions, the ALJ found that Plaintiff was unable to perform anything more than simple tasks and that she was limited to no more than occasional contact with the general public and co-workers. Thus, the ALJ did give some weight to Dr. Hall's opinion. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating

physicians"); Ellis, 392 F.3d at 994 ("In assessing [the claimant's] RFC, the ALJ determined that [the claimant] could sit for a total of six hours and stand for a total of two hours, but was limited to sedentary work. This in itself is a significant limitation, which reveals that the ALJ did give some credit to [the treating doctor's] medical opinions.").

Eighth, to the extent that Dr. Hall opined that Plaintiff's mental impairments would "imperil employment," a treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis, 392 F.3d at 994.

Ninth, the ALJ considered the opinion of Ricardo Moreno, Ph.D., a State agency reviewing psychologist, who reviewed the evidence. Tr. 23. Dr. Moreno opined that Plaintiff was not significantly limited in regard to understanding, remembering, and carrying out short and simple instructions, in regard to making simple work-related decisions, and in regard to asking simple questions or requesting assistance. He further opined that Plaintiff was moderately limited in regard to remembering locations and work-like procedures, understanding and carrying out detailed instructions, performing activities within a schedule, sustaining an ordinary routine without special supervision, working in coordination with others without being distracted by them, maintaining socially appropriate behavior, responding appropriately to changes in the work setting, being aware of normal hazards, traveling to unfamiliar places, and setting realistic goals. Dr. Moreno concluded that despite Plaintiff's limitations, she would have the ability to understand, remember, carry out and persist at simple tasks, make simple work-related judgment, relate adequately to co-workers and supervisors, and adjust adequately to ordinary changes in work routine and settings. Tr.161-63. The court finds that the ALJ's consideration of Dr. Moreno's opinion was consistent with the Regulations

and that it is based on substantial evidence. See Hacker v. Barnhart, 459 F.3d 934, 939 (8th Cir. 2006) ("The regulations specifically provide that the opinions of non-treating physicians may be considered. 20 C.F.R. § 404.1527(f).").

Tenth, the ALJ reviewed the record as a whole upon not giving determining weight to Dr. Hall's opinion and he set forth explicit reasons for not crediting Plaintiff's allegation that she was disabled. "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, or diagnostic evidence). Additionally, SSR 96-2p clarifies that 20 C.F.R. §§ 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." Id. at *5. 1996 WL 374188, *5 (July 2, 1996). When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). The ALJ in the matter under consideration did so.

Eleventh, the ALJ did not draw his own inferences from the medical evidence, as suggested by Plaintiff. Rather, he considered the evidence of record, including Dr. Hall's records. To the extent that the ALJ may not have addressed every detail of Dr. Hall's notes, the ALJ's failure to do so does not establish that he did not consider such records. See Montgomery v. Chater, 69 F.3d 273, 275 (8th

Cir. 1995). See also Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citations omitted); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

Twelfth, despite Plaintiff's contention to the contrary, the ALJ did consider the extent of Plaintiff's relationship with Dr. Hall, his specialty, and, as discussed above, the consistency of Dr. Hall's opinions. In particular, the ALJ considered that Plaintiff first saw Dr. Hall, a psychiatrist, in September 2006 and that she saw him four times in 2007. Tr. 19. See 20 C.F.R. § § 404.1527, 416.927. In conclusion, the court finds that the ALJ gave proper weight to Dr. Hall's opinion and that his decision in this regard is supported by substantial evidence and is consistent with the Regulations and case law.

## B.     Reports of Dr. Finder:

Plaintiff contends that the ALJ did not give proper weight to the opinion of Patrick Finder, a licensed psychologist, who evaluated Plaintiff on July 7, 2006, and again July 6, 2007. Tr. 168-78. As noted by the ALJ, Mr. Finder's reports both detail the history of Plaintiff's marriages, pregnancies, and work history and recount Plaintiff's description of her mental condition and symptoms. Tr. 18. Significantly, Mr. Finder reported, in July 2006, that Plaintiff "denied any problems with concentration or focus but did acknowledge significant memory problems"; that she denied suicidal ideation; that she reported having "ongoing panic attacks"; and that she denied any type of obsessive thoughts or compulsive behaviors. Mr. Finder further reported in July 2006 that Plaintiff was asked

"some items [from] the Comprehension Subtest of the WAIS-III and struggled to come up with appropriate answers"; that she was able to count backwards by two's from 100 and perform serial sevens; she was able to spell the word "world" backwards and "recall five digits in a forward direction and only three in reverse"; that "[b]ased on her own description, [Plaintiff] seem[ed] to have significant problems in fulfilling responsibilities of daily living"; that she reported difficulties in keeping up her house and that her daughter and husband helped her; that she reported that she had "become more and more hesitant to drive due to increasing panic attacks." Mr. Finder reported that, at Axis I, Plaintiff had major depression, recurrent, severe, Generalized anxiety disorder, Panic disorder with agoraphobia; that, at Axis IV, Plaintiff's psycho-social stressors included problems with her primary support group, problems in a social environment, economic problems, and problems with access with health care; and, at Axis V, Plaintiff had a GAF of 40.[2] Mr. Finder's report concluded by stating that "[a]t this point in time it would be extremely difficult, if not impossible, for [Plaintiff] to function in a manner that would allow her to be successful in any type of work environment." Tr. 168-72.

As noted by the ALJ, Mr. Finder's July 2007 report is "nearly identical to his report a year earlier." Tr. 19. In his July 2007 report, Mr. Finder stated that Plaintiff "report[ed] to feeling

---

[2] Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represent "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

depressed and anxious almost all of the time"; that she discussed symptoms of depression, including difficulty sleeping; that she described difficulties with focus and concentration; that "she also discussed significant anxiety." Mr. Finder further reported, in July 2007, that Plaintiff's conversations "evident[ed] some slight paranoia"; that she was oriented to time, place, and person; that she was able to answer some "simple consumer math problems"; that she was able to give acceptable answers to some items off the Comprehension Subtest of the WAIS-III, "even though there was a long latency in her response times"; that this test "measures common sense thinking and knowledge of society"; that she was able to count backwards from 100; that she was able to spell the word "world" backwards"; and that "she did report problems following directions and problems with her memory." At Axis I, Mr. Finder diagnosed Plaintiff with Major depression, recurrent, severe, and, at Axis 40, he reported that she had a GAF of 40. Mr. Finder opined, in July 2007, that Plaintiff "seem[ed] to have significant problems in fulfilling responsibilities of daily living"; that she reported "difficulties in keeping her house up"; and that her condition seemed "slightly worse" than it had been the prior year. Tr. 173-78.

To the extent Mr. Finder's reports rely on Plaintiff's self-reporting of her symptoms, as discussed above in regard to Dr. Hall's opinion, an ALJ is entitled to give less weight to an opinion where the opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence. Kirby, 500 F.3d at 709.

Significantly, Mr. Finder also reported, in July 2006, that Plaintiff said that she had worked a total of ten months outside of the home in her life. An ALJ may discount a claimant's credibility based upon her poor work record. Ownbey v. Sullivan, 5 F.3d 342, 345 (8th Cir. 1993). See also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees, 2 F.3d at 303.

Additionally, Mr. Finder is not an acceptable medical source. "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." Lacroix v. Barnhart, 465 F.3d 881, 885-86 (8th Cir. 2006) (internal citations omitted). Therapists are not acceptable medical sources. See 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources); Lacroix, 465 F.3d at 885-87; Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir.2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.'"). Moreover, Mr. Finder only saw Plaintiff twice for the purpose of evaluating her; he did not treat Plaintiff. See 20 C.F.R. §§ 404.1527(d)(2)(i) & 416.927(d)(2)(i); Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) ("Generally, the longer a treating source has treated [a claimant] and the more times [the claimant has] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion."). To the extent Mr. Finder opined that Plaintiff could not work, as stated above, a determination that a claimant is unable to return to work is reserved for the Commissioner. Ellis, 392 F.3d at 994. In any case, the RFC which the ALJ assigned to Plaintiff reflects that he gave some weight to Mr. Finder's opinion. See Lacroix, 465 F.3d at 886-87 ("[I]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." (quoting 20 C.F.R. §§ 404.1513(d), 416.913(d)). As such, the court finds that the ALJ gave proper weight to Mr. Finder's opinion and that the ALJ's decision, in this regard, is supported by substantial evidence and is consistent with the Regulations and case law.

**C.    Plaintiff's ADD:**

Plaintiff contends that the ALJ erred in not finding that her diagnosis of ADD was not a severe impairment and that he failed to account for her ADD in her RFC. A medical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, rather than by just a claimant's statement of her symptoms. See 20 C.F.R. § 416.908. As noted by the ALJ and as discussed above, Dr. Hall did not diagnose Plaintiff with ADD until February or April 2008, after treating her for many years. As further discussed above, Dr. Hall's diagnosis of ADD was based largely on Plaintiff's subjective complaints. See Veal, 833 F.2d at 699; Kirby, 500 F.3d at 709. Moreover, Mr. Finder, who administered testing which included backward counting, serial sevens, and backward spelling, which tasks Plaintiff successfully completed, did not diagnose Plaintiff with ADD. To the extent Plaintiff's attention and concentration were limited, the ALJ did account for such limitations in Plaintiff's RFC as he found that Plaintiff was limited to the performance of only simple tasks. See Choate, 457 F.3d at 869-70; Ellis, 392 F.3d at 994. The court finds, therefore, that the ALJ gave proper consideration to Plaintiff's diagnosis of ADD and that the ALJ's decision, in this regard, is supported by substantial evidence.

## D. ALJ's Development of the Record:

Plaintiff alleges that the ALJ should have further developed the record. The court acknowledges that in certain circumstances an ALJ is required to further develop the record, even where, as in the matter under consideration, a claimant is represented by an attorney. See Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004) (citing Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983)). See also Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record"); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). However, an ALJ need not develop a record further

where it is sufficient "so that a just determination of disability may be made." <u>Landess v. Weinberger</u>, 490 F.2d 1187, 1189 (8th Cir. 1974). The duty to develop the record only arises where "a crucial issue is undeveloped." <u>Ellis v. Barnhart</u>, 392 F.3d 988, 994 (8th Cir. 2005). "'[R]eversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial.'" <u>Id.</u> (quoting <u>Shannon v. Chater</u>, 54 F.3d 484, 488 (8th Cir.1995)).

Plaintiff suggests that the ALJ had the duty to develop the record if he did not give controlling weight to Dr. Hall's opinion. The court has found above that the ALJ gave proper weight to Dr. Hall's opinion. The court further finds that the record was sufficient for the ALJ to make a just determination of whether Plaintiff was disabled. <u>Landess</u>, 490 F.2d at1189. As such, the ALJ was not required to recontact Dr. Hall. To the extent Plaintiff suggests that the ALJ should have ordered that Plaintiff undergo a consulting examination, an "ALJ is required to order medical examinations and tests only if the medical records presented to [her] do not give sufficient medical evidence to determine whether the claimant is disabled." <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023 (8th Cir. 1994) (citing <u>Conley v. Bowen</u>, 781 F.2d 143, 146 (8th Cir.1986)). The court finds that there was sufficient evidence for the ALJ to make a determination. Under such circumstances, the ALJ was not required to order a consulting examination. The court finds, therefore, that Plaintiff's argument that the ALJ should have further developed the record is without merit.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and in her Brief in Support of Complaint is **DENIED**.  Docs. 1, 7

**IT IS FURTHER ORDERED** that a Judgment incorporating this Memorandum Opinion shall issue this same date.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of July, 2011.